**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **BERNARD LEWIS,**<br>Plaintiff**,**<br>vs.<br>**DOW CHEMICAL CORPORATION,**<br>Defendant**.** | CASE NO. 16-cv-06165-YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 47 |

Plaintiff brings the instant employment discrimination action against his former employer of 39 years, defendant Dow Chemical Corporation ("Dow" or the "Company"), alleging claims for: (1) harassment on the basis of age in violation of the Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12940 *et seq*.; (2) age discrimination in violation of FEHA; (3) wrongful termination in violation of public policy; and (4) breach of implied-in-fact contract not to terminate employment without good cause. Plaintiff seeks actual, compensatory, and punitive damages according to proof at time of trial, declaratory and injunctive relief, costs of suit and attorney's fees, and prejudgment interest.

Now before the Court is defendant's motion for summary judgment on all claims, in addition to plaintiff's prayer for punitive and emotional distress damages, and plaintiff's entitlement to front or back pay. (Dkt. No. 47 ("Motion").) Having carefully considered the papers submitted, the admissible evidence, the pleadings in this action, and the oral arguments held on May 1, 2018, and for the reasons set forth below, the Court hereby **ORDERS** as follows:

The Court **GRANTS** defendant's motion as to plaintiff's first claim for harassment on the basis of age, plaintiff's third claim for wrongful termination insofar as it is premised on the same, and plaintiff's prayer for punitive damages. The Court **DENIES** defendant's motion as to plaintiff's second claim for age discrimination, plaintiff's third claim for wrongful termination

insofar as it is premised on the same, and plaintiff's fourth claim for breach of implied-in-fact contract. The Court additionally **DENIES** defendant's motion as to plaintiff's request for emotional distress damages and plaintiff's entitlement to front or back pay.

## I. BACKGROUND

Fundamentally, this dispute arises between plaintiff and his supervisor, Chris Johnson, over whether Johnson's conduct leading up to plaintiff's termination from Dow in April 2016 was justified or instead a pretext for age discrimination. The following facts are not meaningfully disputed unless otherwise noted and are set forth for purposes of background.

Plaintiff began his employment at Rohm & Haas Chemicals, LLC ("Rohm & Haas") in 1977 and worked at the company's Hayward Plant, located in Hayward, California.[1] (*See* Plaintiff's Responsive Separate Statement of Disputed and Undisputed Material Facts ("RSS") No. 1, Dkt. No. 50.) At the Hayward Plant, various chemicals are mixed to make paint-related products. (*Id*. No. 2.)

In March 2013, when Johnson assumed the Operations Leader position at the Hayward Plant, plaintiff was employed at the site as a Reactor Operator (formal title, Production Technician). (Declaration of Chris Johnson in Support of Defendant's Motion for Summary Judgment ("Johnson Decl.") ¶ 8, Dkt. No. 47-7.) As Operations Leader for the Hayward Plant, Johnson was initially responsible for managing the Reactor Operators, including plaintiff, and his role expanded in September 2014 to include overseeing logistics at the Hayward Plant. (*Id*. ¶ 3.) Plaintiff reported to Johnson, and Johnson, in turn, reported to Sean Clinning, the Hayward Plant Site Leader. (*Id*. ¶¶ 5, 8.)

On July 17, 2014, plaintiff was placed on a six-month Performance Improvement Plan ("PIP") on the alleged grounds that his performance had not met Company expectations in meeting compliance requirements for training and following procedures and processes. (RSS No. 25; *see also* Bernard Lewis Deposition Transcript ("Lewis Depo. Tr.") Exh. 19, Dkt. Nos. 47-21,

---

[1] Dow acquired Rohm & Haas in 2008. (Declaration of Kay Hackett in Support of Defendant's Motion for Summary Judgment ("Hackett Decl.") ¶ 4, Dkt. No. 47-5.)

47-22, 47-23.) Johnson issued a "Notification of Performance Improvement Plan Extension" on January 16, 2015. (Johnson Decl. Exh. I.)

Plaintiff was absent from work on medical leave from January 19, 2015 through the end of June 2015, after which events crescendoed. (RSS No. 31.) Plaintiff alleges that Johnson called him into his office on two occasions in January of 2016. (RSS Nos. 72, 73.) On the first occasion, Johnson allegedly asked plaintiff, "When are you going to retire?" and stated, "Well, you really need to retire." (Lewis Depo. Tr. at 93:3–13.) On the second occasion, approximately two weeks later, Johnson purportedly screamed at plaintiff that his performance "suck[ed]," asked when he was going to retire and "step down," and told plaintiff that he needed to retire. (*Id*. at 93:25–95:25; 101:5–15.) Thereafter, on March 4, 2016, plaintiff received his 2015 Performance Review, which was completed by Johnson and gave plaintiff an overall rating of "Less Than Job Expectations." (RSS No. 33; *see also* Johnson Decl. ¶ 23; *id*. Exh. J.)

Johnson subsequently "document[ed]" plaintiff's various alleged performance issues in a March 9, 2016 email he sent to himself. (*Id*. ¶ 24; *id*. Exh. K.) That same day, Johnson and Associate Human Resources Manager Kathy Fifer met with plaintiff and notified him of Dow's decision to place him on paid suspension. (RSS No. 35.) On March 22, 2016, plaintiff's Employee Review Meeting ("ERM") took place, at which the decision was made to terminate plaintiff's employment. The ERM participants included Johnson, Clinning, Fifer, in-house counsel Danielle Mehallo, and neutral leader Joe Gula.[2] (*Id*. No. 37.) Plaintiff's employment was subsequently terminated on April 11, 2016. (*Id*. No. 38.)[3]

Defendant essentially argues that plaintiff was terminated due to his declining performance in the years leading up to his termination. Plaintiff asserts that he was not terminated as a result of his poor performance but rather because of his age.

---

[2] The "neutral leader" is a manger in a leadership-level role who works in a different department than the employee who is the subject of the meeting. (*See* Hackett Decl. ¶ 12.)

[3] The Court does not rely upon plaintiff's additional facts to which defendant has objected, namely numbers 57, 63, 68, or 69, to decide the instant motion. (*See* RSS Nos. 57, 63, 68, 69; *see also* Defendant's Reply In Support of Motion for Summary Judgment ("Reply") at 6, Dkt. No. 54.) Accordingly, the Court does not reach defendant's objections to these additional facts.

3

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A non-moving party who bears the burden of proof at trial as to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[A] district court is not entitled to weigh the evidence and resolve disputed underlying factual issues." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). Rather, "the inferences to be drawn from the underling facts must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (internal quotation marks and ellipsis omitted).

## III. DISCUSSION

### A. First Claim: Harassment Based Upon Age Under FEHA

Plaintiff asserts in his first claim that defendant engaged in harassment in violation of FEHA. To establish a *prima facie* claim for harassment under FEHA, "a plaintiff must demonstrate that: (1) [he] is a member of a protected group; (2) [he] was subjected to harassment because [he] belonged to this protected group; and (3) the alleged harassment was so severe that it created a hostile work environment." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1244 (9th Cir. 2013); *see also Chavez v. JPMorgan Chase Bank*, No. 15-cv-02328-DDP-PJW, 2016 WL 3556591, at *6 (C.D. Cal. June 29, 2016) ("[A] [p]laintiff alleging age-based harassment must demonstrate, among other things, that the harassment 'is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'") (quoting *Mokler v. Cty. of Orange*, 157 Cal. App. 4th 121, 145 (2007)), *rev'd in part on other grounds*, No. 16-55957, 2018 WL 1898174 (9th Cir. Apr. 20, 2018). "[H]arassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the

4

harassed employee." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 706 (2009). "The plaintiff must show a concerted pattern of harassment of a repeated, routine or generalized nature." *Lawler*, 704 F.3d at 1244 (internal quotation marks omitted). "[E]vidence of, at most, isolated stray remarks is insufficient to give rise to a triable issue of fact regarding hostile work environment or harassment based on age." *Allen v. Centillium Comms. Inc.*, No. 06-cv-06153-EDL, 2008 WL 916976, at *7 (N.D. Cal. Apr. 3, 2008). Harassment consists of "actions outside the scope of job duties[,]" and "commonly necessary personnel management actions such as hiring and firing, job or project assignments, . . . promotion or demotion, [and] performance evaluations, . . . do not come within the meaning of harassment." *Lawler*, 704 F.3d at 1244 (internal quotation marks omitted). Further, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

Here, with respect to the first and second prongs of the *prima facie* case, it is clear that plaintiff is in a protected category (over 40 years of age), and the Court assumes that Johnson in fact made the remarks on the two dates in January 2016 regarding plaintiff's retirement. However, plaintiff has proffered no evidence of any verbal or physical conduct of an age-related nature that was sufficiently severe or pervasive as to alter the conditions of his employment and create an abusive work environment. Two incidents of alleged harassment do not form a pattern of behavior that is sufficiently severe to constitute such an environment. *See, e.g., Mokler*, 157 Cal. App. 4th at 144–45 (finding three incidents of harassment over five-week period fell short of establishing "a pattern of continuous, pervasive harassment") (internal quotation marks omitted). Moreover, Johnson's comments to not rise to the level of comments that "alter the conditions of employment" or that "create an abusive work environment." *Manatt v. Bank of Am., NA*, 339 F.3d 792, 798–99 (9th Cir. 2003) (noting law prohibiting discrimination is not a "general civility code," and citing *Vasquez v. Cty. of L.A.*, 307 F.3d 884, 893 (9th Cir. 2002) as "finding no hostile environment discrimination where the employee was told he had 'a typical Hispanic macho attitude,' that he should work in the field because 'Hispanics do good in the field' and where he was yelled at in front of others").

Plaintiff concedes that the question whether an environment was hostile or abusive is

5

evaluated by examining the totality of the circumstances. *See* Plaintiff's Memorandum of Points & Authorities in Opposition to Defendant's Motion for Summary Judgment ("Opposition") at 6, Dkt. No. 48; *see also Miller v. Dep't of Corr.*, 36 Cal. 4th 446, 462 (2005). However, the additional circumstances plaintiff cites do not evidence conduct relative to the work environment and certainly do not create a dispute of material fact.[4] Further, plaintiff's own deposition testimony confirms that he did not perceive his work environment to be pervasively severe. Namely, plaintiff admitted that: (i) he did not respond to Johnson's statements, he remained calm, he simply walked out of both meetings, and, because his shift was ending, he went home (Lewis Depo Tr. at 98:16–100:8);[5] (ii) Johnson was the only individual who made these types of comments (*id.* at 93:16–18; 94:23–95:3); (iii) aside from Johnson, plaintiff did not believe any other manager harassed him because of his age (RSS No. 42); and (iv) plaintiff did not call the anonymous employee hotline to report Johnson's alleged conduct, nor did he ever report to Human Resources or any other Company employee that he felt he was being treated differently because of his age (RSS No. 39). In light of this undisputed evidence, the Court finds that the "social environment of plaintiff's workplace [was not] intolerable." *Roby*, 47 Cal. 4th at 706. Accordingly, the court **GRANTS** defendant's motion for summary judgment as to plaintiff's first claim for harassment under FEHA.

**B.  Second Claim: Discrimination Based Upon Age Under FEHA**

Plaintiff's second claim alleges age discrimination in violation of FEHA. In evaluating such claims, California has adopted the three-stage burden shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *see also Guz v. Betchel Nat'l, Inc.*, 24 Cal.

---

[4] These circumstances include: "(1) Mr. Johnson wrongfully accusing Mr. Lewis of a 'batch card' error in February, 2014 when the real problem was an 'unclear' protocol that ultimately was Mr. Johnson's responsibility . . . ; (2) singling out Mr. Lewis for discipline around on-the-job training even though he outperformed his younger co-workers . . . ; and (3) falsely accusing Mr. Lewis of performance errors on the job[.]" (Opposition at 6.)

[5] Plaintiff has provided no explanation as to why his deposition testimony should be disregarded, and the Court therefore disregards his contradictory statement in his responsive separate statement of disputed and undisputed material facts, that "Mr. Lewis left the room in a panic." (*See* RSS No. 73.)

4th 317, 354–56 (2000). Once the plaintiff has made a *prima facie* showing of employment discrimination, "the burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action." *Deschene v. Pinole Point Steel Co.*, 76 Cal. App. 4th 33, 44 (1999). If the employer offers such a reason, "plaintiff must offer evidence that the employer's stated reason is either false or pretextual, or evidence that the employer acted with discriminatory animus, or evidence of each which would permit a reasonable trier of fact to conclude the employer intentionally discriminated." *Id*. Finally, "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment." *Santillan v. USA Waste of California, Inc.*, 853 F.3d 1035, 1042 (9th Cir. 2017) (quoting *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008)).

### 1. *Prima Facie Case*

To state a *prima facie* case for age discrimination under FEHA, plaintiff must establish that: (1) he was a member of a protected class (*i.e.*, 40 years of age or older); (2) he was performing competently in the position he held; (3) he suffered an adverse employment action, such as termination; and (4) "some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355; *see also Santillan*, 853 F.3d at 1044. In claims for age discrimination, plaintiff may instead satisfy the fourth element by demonstrating that he was replaced by a substantially younger employee with equal or inferior qualifications. *Santillan*, 853 F.3d at 1043; *Schechner v. KPIX-TV*, 686 F.3d 1018, 1023 (9th Cir. 2012). Moreover, the Ninth Circuit has noted that the fourth element should be evaluated "with some flexibility." *Santillan*, 853 F.3d at 1043 (quoting *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 917 (9th Cir. 1996)).

The Court finds that the record contains evidence sufficient to demonstrate a triable issue as to the existence of a *prima facie* case. It is undisputed that plaintiff belongs to a protected class, because he was over forty years old at the time of his termination, and that he suffered an adverse employment action when he was terminated. Accordingly, the issues in dispute regarding plaintiff's *prima facie* case are whether plaintiff was performing his job competently and whether some other circumstance suggests defendant's discriminatory motive.

With respect to plaintiff's performance and whether it was competent at the time he was

terminated, defendant essentially argues that it has presented undisputed evidence that plaintiff was not meeting his job expectations and failed to improve his performance despite multiple warnings. (*See* Motion at 12–13.) Defendant does not persuade. While, defendant proffers evidence that Johnson was dissatisfied with plaintiff's performance, plaintiff similarly proffers contrary evidence, including that: (i) he was "respected on shift as a hard worker" and "work[ed] well with his teammates and maintain[ed] a positive and upbeat attitude even in the face of adversity" (Lewis Depo. Tr. Exh. 15 at 2); and (ii) plaintiff "stepped up his game in leading by example [in the areas of EHS and communication]" (Declaration of Robert Wallace in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Wallace Decl.") Exh. Q at 2, Dkt. No. 49). While it is undisputed that Johnson gave plaintiff an overall rating on his 2015 Performance Review of "Less Than Job Expectations," the Performance Review expressly states that plaintiff's "limited growth in 2015[] ow[ed] to his absence for the majority of the year" in addition to his "lack of progress on his Performance Improvement Plan, for which he was given an extension in early 2015."[6] (Johnson Decl. Exh. J at 2.) Consequently, the opportunity plaintiff was given to "make satisfactory progress during the performance improvement extension period," (Wallace Decl. Exh. R at 1), would appear to be in dispute, given that he was out on medical leave from January 19, 2015 through the end of June 2015. Another alleged performance shortcoming noted in the 2015 Performance Review is plaintiff's failure to complete his ethics training in a timely manner, but whether plaintiff was in fact behind on any trainings at the end of 2015 and/or early 2016 is in dispute.[7] As to the various performance issues documented by Johnson in the March 9, 2016 email he sent to himself, these are all in dispute. (*See* RSS Nos. 34, 75–80.)

---

[6] The parties, in turn, dispute the point in time at which plaintiff was relieved of the requirements of the PIP. Defendant noted at oral argument the language in the notification of PIP extension that "[t]he expectation is that your performance will be sustained permanently going forward," (*see* Wallace Decl. Exh. R at 2), while plaintiff focused on the statement in the notification that "[a]t the end of your performance improvement extension period, if your performance has been sustained at a satisfactory level, you will be removed from the plan," (*id*. at 1).

[7] Defendant indicated at oral argument that it is not in possession of any objective document (*i.e.*, not authored by Johnson) indicating plaintiff's outstanding trainings. (*See also* RSS No. 71.)

8

Accordingly, a rational trier of fact could not conclude, based on these and other disputed facts surrounding plaintiff's performance, that plaintiff's claims are foreclosed by the undisputed evidence.[8]

With respect to the final element of plaintiff's *prima facie* case for age discrimination, the evidence in the record suggests a discriminatory motive. The Ninth Circuit has noted that a ten-year age difference between the terminated employee and the replacement employee would be considered substantial. *See Diaz*, 521 F.3d at 1209 (citing approvingly *Hartley v. Wis. Bell, Inc.*, 124 F.3d 887, 893 (8th Cir. 1997) (finding ten-year difference in ages to be presumptively substantial)); *see also France v. Johnson*, 795 F.3d 1170, 1174 (9th Cir. 2015) (age difference of ten years or more between a plaintiff and his or her replacement is presumptively substantial).[9] Neither plaintiff nor defendant argues that the 27-year-old individual promoted to Reactor Operator the month following plaintiff's termination was more or less qualified than plaintiff. Therefore, viewed in the light most favorable to plaintiff, defendant's admission that a 27-year-old individual was promoted to Reactor Operator in May of 2016 is sufficient to satisfy the fourth element of an age discrimination claim. (*See* Hackett Decl. ¶ 6.) Accordingly, a rational jury could conclude that plaintiff has sufficiently demonstrated a *prima facie* case for age

---

[8] At oral argument, defendant cited *Yoshimoto v. O'Reilly Auto., Inc.*, Nos. C 10-5438 PJH, C 11-3119 PJH, 2013 WL 6446249 (N.D. Cal. Dec. 9, 2013), noting that one unsatisfactory performance review prevented the plaintiff in that case from establishing that he was performing his job in a satisfactory manner. Defendant was presumably referring to the following statement by the *Yoshimoto* court: "[T]he court finds that the November 2010 customer incident shows that plaintiff was not performing his job satisfactorily, thus preventing plaintiff from establishing a prima facie case of discrimination with regard to his termination." *Id*. at *18. *Yoshimoto* is distinguishable from the case at hand because, among other reasons, the employer in that case presented a statement from an employee who witnessed the incident that precipitated the plaintiff's termination—a hostile confrontation between plaintiff and a customer in which plaintiff "yell[ed] expletives" at the customer. *Id*. Here, defendant's proffered evidence of plaintiff's unsatisfactory job performance—principally, a February 26, 2014 disciplinary letter, an April 14, 2014 performance letter, a July 17, 2014 disciplinary letter, the July 17, 2014 notice of PIP, plaintiff's 2014 and 2015 performance reviews, and Johnson's March 9, 2016 email to himself—emanates not from a third-party witness, but from the very source of the alleged discrimination, *i.e.*, Johnson himself. (*See* Lewis Depo. Exhs. 16, 17, 18, 19, 22; Johnson. Decl. Exhs. J, K.)

[9] *Cf. Santillan*, 853 F.3d at 1035 (noting "there is a potential thirteen-year age gap between Santillan and his replacement . . . who also has 21 fewer years of experience as a garbage truck driver.").

1  discrimination. The Court thus proceeds to analyze the second and third steps of the *McDonnell*

2  *Douglas* test.[10]

### 2. *Whether Dow Had a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff's Employment*

To be "legitimate," the employer's proffered reason need only be "facially unrelated to prohibited bias." *Reid v. Google, Inc.*, 50 Cal. 4th 512, 520 n.2 (2010) (emphasis and internal quotation marks removed); *see also Guz*, 24 Cal. 4th at 358 ("'[L]egitimate' reasons in this context are reasons that are *facially unrelated to prohibited bias*, and which, if true, would thus preclude a finding *of discrimination*.") (citation omitted) (emphasis in original); *McInteer v. Ashley Distrib. Servs.*, 40 F. Supp. 3d 1269, 1284 (C.D. Cal. 2014) ("Defendants' 'burden is one of production, not persuasion, thereby involving no credibility assessment.'") (quoting *Day v. Sears Holdings Corp.*, 930 F. Supp. 2d 1146, 1169 (C.D. Cal. 2013)).

Defendant essentially contends that it terminated plaintiff based on his "safety and procedure related errors" and only after holding the ERM. (Motion at 16.) Because plaintiff's purportedly poor performance is "facially" unrelated to his age, defendant has met its burden to proffer a legitimate, non-discriminatory reason for terminating plaintiff's employment. *See Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002) (holding poor job performance constitutes a legitimate, nondiscriminatory reason for terminating an employee). Thus, the burden shifts back to plaintiff to prove that the stated cause for termination is pretext for

---

[10] While the Ninth Circuit has stated that "a plaintiff's burden is much less at the prima facie stage than at the pretext stage," *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1158 (9th Cir. 2010), the evidence in the record of pretext further suggests a discriminatory motive. (*See infra* pp. 11–12.)

Further, defendant's reliance on *Phipps v. Gary Drilling Co., Inc.*, 722 F. Supp. 615 (E.D. Cal. 1989) in its motion and at oral argument is misplaced. Defendant cites *Phipps* in support of its argument that plaintiff fails to create a triable issue of fact regarding the fourth element of his *prima facie* case because the inference of discrimination may be rebutted where there is "substantial representation of older workers in the workforce." (Motion at 14.) *Phipps*, however is distinguishable from the case at hand because, among other reasons: (i) the plaintiff in *Phipps* admitted that defendant's administrative manager had referred to plaintiff as "that old fart" as a "term of affection"; and (ii) the administrative manager "had nothing to do with the decision to discharge plaintiff." *Id*. at 623.

10

unlawful discrimination.

### 3. *Showing of Pretext*

A plaintiff can prove pretext "(1) directly, by showing that unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112–13 (9th Cir. 2011) (assessing age and disability discrimination claims under FEHA). "Circumstantial evidence of pretext must be specific and substantial in order to survive summary judgment." *Bergene v. Salt River Project Agr. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001). Nonetheless, Ninth Circuit law is also clear that the plaintiff's burden at this stage is "minimal." *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1127 (9th Cir. 2009). "[V]ery little evidence is necessary to raise a genuine issue of fact regarding an employer's motive; and any indication of discriminatory motive may suffice to raise a question that can only be resolved by a fact-finder." *Id*. (internal quotation marks omitted). And, "[i]f a rational trier of fact could, on all the evidence, find that the employer's action was taken for impermissibly discriminatory reasons, summary judgment for the defense is inappropriate." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).[11]

Plaintiff has met his burden of raising a triable issue of fact regarding whether defendant's proffered justifications for terminating him were pretextual. As explained above, defendant's proffer of performance-related evidence emanating from sources aside from Johnson is minimal, and various facts surrounding plaintiff's performance are disputed. (*See supra* pp. 7–8.) For instance, the parties dispute the point in time at which plaintiff was relieved of the requirements of the PIP and whether plaintiff was behind on any trainings at the end of 2015/early 2016. Assuming Johnson in fact made the comments on the two dates in January 2016 regarding

---

[11] "Importantly, the 'shift' back to the plaintiff does not place a new burden of production on the plaintiff." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1169 (9th Cir. 2007). "[T]he factfinder may infer 'the ultimate fact of intentional discrimination' without additional proof once the plaintiff has made out her prima facie case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable." *Id*. at 1169–70 (internal quotation marks omitted).

11

plaintiff's retirement, which defendant concedes is proper at summary judgment, the Court concludes a reasonable factfinder could thus find that these statements were made despite satisfactory performance by plaintiff. Moreover, the alleged statements were made approximately two months before Johnson wrote the email to himself on March 9, 2016, "document[ing] Mr. Lewis's performance issues between January and March 2016." (Johnson Decl. ¶ 24.) Plaintiff maintains the documented incidents were never discussed with him as being problematic, and, aside from Johnson's statement in the email to himself that he "reviewed with [plaintiff] [these] recent performance issues" (*id*. Exh. K at 1.), there is no independent evidence in the record to corroborate Johnson's assertion.[12] The same day Johnson sent the email to himself, he and Fifer met with plaintiff and notified him of Dow's decision to place plaintiff on paid suspension. (RSS No. 35.) On March 22, 2016, Johnson attended the ERM meeting, at which the decision was made to terminate plaintiff's employment. A 27-year-old individual was promoted to Reactor Operator the month following plaintiff's termination. (Hackett Decl. ¶ 6.)

Assessing these facts as a whole and in the light most favorable to plaintiff, the Court finds that plaintiff has met his burden of showing that triable issues of fact exist regarding defendant's motives for plaintiff's termination. Ultimately, the trier of fact should determine whether plaintiff was terminated for pretextual reasons. Accordingly, defendant's motion for summary judgment as to plaintiff's age discrimination claim is **DENIED**.

### C. Third Claim: Wrongful Termination in Violation of Public Policy

In addition to his FEHA claims, plaintiff asserts a common-law tort claim for wrongful termination against public policy based on defendant's alleged violations of FEHA. (Complaint for Damages ¶ 17, Dkt. No 1-1; *see also* Opposition at 16.) For the same reasons set forth in the Court's analysis of plaintiff's FEHA claims, the Court concludes that: (i) plaintiff's wrongful

---

[12] Indeed, defendant's stated ground at oral argument for disputing plaintiff's Additional Fact number 74—that "Plaintiff was put on suspension and ultimately fired for six (6) new (alleged) reasons, as set forth in Mr. Johnson's March 9, 2016 email to himself" (*see* RSS No. 74)—was not that the facts were not "new," but rather that the errors described in the email were not the *only* reasons behind plaintiff's termination and should be considered "in light of prior performance issues." (Reply at 4.)

12

termination claim based on his FEHA harassment claim fails; and (ii) plaintiff raises triable issues of fact with respect to his wrongful termination claim based on his FEHA age discrimination claim.[13] Accordingly, the Court **GRANTS** defendant's motion for summary judgment as to plaintiff's wrongful termination claim insofar as it is premised on plaintiff's FEHA harassment claim and **DENIES** defendant's motion as to plaintiff's wrongful termination claim insofar as it is premised on plaintiff's FEHA age discrimination claim.

### D. Plaintiff's Fourth Claim: Breach of Implied-in-Fact Contract

California's statutory presumption of at-will employment can be superseded contractually with either an express or implied agreement. *See* Cal. Lab. Code. § 2922; *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 667 (1988). The existence of an implied contract to discharge an employee only for good cause is normally a question of fact. *See Alexander v. Nextel Commc'ns, Inc.*, 52 Cal. App. 4th 1376, 1381 (1997). The California Supreme Court has identified several factors relevant in determining the existence of an implied contract that would turn an at-will contract to a permanent employment contract, including "the personnel policies or practices of the employer, the employee's longevity of service, actions or communications by the employer reflecting assurances of continued employment, and the practices of the industry in which the employee is engaged." *Foley*, 47 Cal. 3d at 680 (internal quotation marks omitted). Under the totality of the circumstances, of course, it is not necessary that each element be present, but all elements together must permit an inference that an employment contract exists. "Agreement may be shown by the acts and conduct of the parties, interpreted in the light of the subject matter and of the surrounding circumstances." *Id*. at 681 (internal quotation marks omitted). In the context of implied employment contracts, "good cause" is defined as "fair and honest reasons, regulated by good faith on the part of the employer, that are not trivial, arbitrary or capricious, unrelated to business needs or goals, or pretextual." *Cotran v. Rollins Hudig Hall Int'l, Inc.*, 17 Cal.4th 93, 107–08 (1998).

---

[13] At oral argument, the parties stipulated that plaintiff's third cause of action rises and falls with his first and second causes of action. (*See also* Motion at 19; Opposition at 16.)

13

Here, evidence in the record regarding the totality of the circumstances raises a triable issue as to whether plaintiff had an implied employment contract rather than genuine "at-will" employment with defendant. On the one hand, plaintiff testified that he never received any written or verbal promises of employment for any specific period of time. (Lewis Depo. Tr. at 259:16–260:3.) In addition, Dow's at-will employment policy provides in relevant part that "[e]mployment with the Company is not for any specific period, and is at-will. . . . [The Company] is free to terminate an employee's employment for any reason at any time, with or without notice."[14] (Hackett Decl. Exh. A.) On the other hand, plaintiff has presented adequate evidence to demonstrate longevity of service, as he was an employee at Dow for 39 years,[15] and he also points to satisfactory performance reviews. (*See* RSS Nos. 48–52, 54, 55.) In its motion and at oral argument, defendant cited *Guz* for the proposition that long service, favorable reviews, and regular pay raises are not enough to provide the existence of an implied contract. (*See* Motion at 21.) The Court agrees. However, the California Supreme Court also qualified the reference. Thus: "[L]ong duration of service, regular promotions, favorable performance reviews, praise from supervisors, and salary increases do not, *without more*, imply an employer's contractual intent to relinquish its at-will rights." *Guz*, 24 Cal. 5th at 341 (emphasis supplied). The "without more" language is key here. Namely, *in addition to* the evidence of plaintiff's longevity of service and satisfactory performance reviews, the record contains evidence that "[e]mployee terminations are always preceded by an 'Employee Review Meeting,'" the purpose of which is "to ensure that termination decisions are only arrived at following careful consideration of the circumstances in each case." (Hackett Decl. ¶ 12.) And as defendant conceded at oral argument, the actions of the ERM's participants fall within the definition of "good cause" articulated in *Cotran*.

---

[14] The language in defendant's at-will employment policy expressly stating that employment is "at-will" does not preclude the Court's consideration of whether an implied-in-fact contract existed. *See Guz*, 24 Cal. 4th at 340 ("[D]isclaimer language in an employee handbook or policy does not necessarily mean an employee is employed at will."). Such language is nonetheless relevant and "must be taken into account, along with all other pertinent evidence, in ascertaining the terms on which a worker was employed." *Id*.

[15] *See Foley*, 47 Cal. 3d at 681 (finding six years and nine months was sufficient to satisfy "longevity of employment" element).

14

Accordingly, based on the evidence presented by the parties, genuine issues of material fact exist as to whether under the totality of the circumstances, the parties entered into an at-will employment. Moreover, for the reasons set forth in the Court's analysis of plaintiff's FEHA claim for age discrimination, and due to the lack of evidence in the record of what precise "circumstances" were "careful[ly] consider[ed]" at plaintiff's ERM (Hackett Decl. ¶ 12), triable issues of fact exist as to whether the decision to terminate plaintiff was "objectively reasonable and arrived at honestly and in good faith after a fair and appropriate investigation." *See Miller v. United Parcel Serv., Inc.*, No. C 03-2405 PJH, 2004 WL 1771571, at *13 (N.D. Cal. Aug. 6, 2004) (citing *Cotran*). Defendant's motion for summary judgment as to this claim is thus **DENIED**.

### E. Plaintiff's Prayer for Punitive Damages

Defendant, however, is entitled to summary judgment as to plaintiff's request for punitive damages. "[I]n a civil action under the FEHA, all relief generally available in noncontractual actions, including punitive damages, may be obtained." *Erdmann v. Tranquility Inc.*, 155 F. Supp. 2d 1152, 1167 (N.D. Cal. 2001) (quoting *Commodore Home Sys., Inc. v. Superior Court*, 32 Cal. 3d 211, 221 (1982)). Under California law, a plaintiff is entitled to punitive damages where he can show by "clear and convincing evidence[] that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. Where the defendant is a corporation, the evidence must demonstrate that an officer, director, or managing agent committed, authorized, or ratified an act of malice, oppression, or fraud. *Id.*; *see also White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999). A "managing agent," in turn, is defined as an employee "who exercises substantial discretionary authority over decisions that ultimately determine corporate policy." *White*, 21 Cal. 4th at 573. "The scope of a corporate employee's discretion and authority" is "a question of fact for decision on a case-by-case basis." *Id.* at 567. However, "supervisory employees" typically are not considered managing agents under section 3294 unless they exercise "substantial discretionary authority over decisions that ultimately determine corporate policy over an aspect of the corporation's business." *Id.* at 579–80.[16]

---

[16] While plaintiff need not prove his case at summary judgment, "the higher clear and convincing evidentiary standard must still be taken into account because the plaintiff ultimately

15

Here, plaintiff concedes that "Dow has submitted evidence establishing that Mr. Johnson . . . was not a 'managing agent' of Dow for purposes of evaluating the availability of punitive damages" (Opposition at 20), but he argues that "Dow has failed to submit any evidence that Mr. Clinning, Ms. Fifer, Mr. Gula, and/or Ms. Mehallo were also not managing agents of Dow." (*Id.*) Discovery has long closed. At the summary judgment stage, it is plaintiff's burden to raise triable issues. Here, the record is barren. Indeed, plaintiff did not depose *any* of the ERM participants, including Johnson. Thus, "no reasonable jury could find the plaintiff's evidence [or lack thereof, in this instance] to be clear and convincing proof of malice, fraud or oppression." *Spinks*, 171 Cal. App. 4th at 1053 (internal quotation marks omitted). Accordingly, defendant's motion for summary judgment as to plaintiff's request for punitive damages is **GRANTED**.

### F. Plaintiff's Prayer for Emotional Distress Damages and Entitlement to Front or Back Pay

As to plaintiff's claim that he suffered noneconomic losses in the form of emotional distress, a factual dispute exists over whether or not plaintiff understood the temporal scope of the questions posed in this regard at his deposition. (*See* RSS No. 47; *see also* Motion at 25; Opposition at 21.) Accordingly, defendant's motion for summary judgment as to plaintiff's request for emotional distress damages is **DENIED**.

Similarly, with respect to plaintiff's entitlement to front or back pay, a factual dispute exists over the meaning of plaintiff's testimony that he "took retirement" in early 2017 and whether he voluntarily withdrew from the workforce and, consequently, failed to mitigate his damages. *See Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020–22 (9th Cir. 2000) (holding back and front pay are not warranted if plaintiff "voluntar[ily] withdraw[s] from the work force"); *see also Boehm v. Am. Broadcasting Co., Inc.*, 929 F.2d 482, 485–86 (9th Cir. 1991) ("Under California law, the question of whether [a plaintiff] acted reasonably regarding his duty to mitigate damages is one of fact."). Accordingly, defendant's motion for summary judgment as to

---

must be able to meet that standard." *See Hamilton v. RadioShack Corp.*, No. C 11-00888 LB, 2012 WL 4645771, at *12 (N.D. Cal. Sept. 28, 2012) (citing *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1053 (2009)).

16

plaintiff's entitlement to front or back pay is **DENIED**.[17]

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **GRANTS** defendant's motion for summary judgment as to as to plaintiff's first claim for harassment on the basis of age, plaintiff's third claim for wrongful termination insofar as it is premised on the same, and plaintiff's prayer for punitive damages. The Court also **DENIES** defendant's motion as to plaintiff's second claim for age discrimination, plaintiff's third claim for wrongful termination insofar as it is premised on the same, plaintiff's fourth claim for breach of implied-in-fact contract, plaintiff's request for emotional distress damages, and also plaintiff's entitlement to front or back pay.

This Order terminates Docket Number 47.

**IT IS SO ORDERED.**

Dated: May 17, 2018

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

---

[17] Defendant's objection to plaintiff's proffered "Work Search Questionnaire" (*see* Reply at 6; Wallace Decl. Exh. X) on the grounds that it is unauthenticated and lacks foundation is **SUSTAINED**.

17